UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARVIN ELLISON,

    Plaintiff,

    v.       CAUSE NO. 3:19-CV-916-PPS-MGG

EVANS, et al.,

    Defendants.

OPINION AND ORDER

Plaintiff Marvin Ellison is incarcerated at the Miami Correctional Facility. During a "shakedown" of his housing unit, a female prison guard subjected Ellison to a strip search. He objected on religious grounds but nonetheless complied with the order to undress. He's suing for compensatory damages in the amount of $100,000, claiming that the guard (Officer Evans), the Warden, and the prison facility itself violated his rights under First, Fourth, and Eight Amendments to the United States Constitution. At the outset, I'll note this case does not appear to be brought under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., which affords broader protections than the First Amendment. Perhaps this is because RLUIPA does not authorize an award of money damages. *See Sossamon v. Texas*, 563 U.S. 277, 285 (2011). Because Ellison is seeking only money damages, I am construing his complaint under the Constitution instead of RLUIPA.

"A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, because Mr. Ellison is incarcerated, pursuant to 28 U.S.C. § 1915A, I must review the complaint and dismiss it if the action "is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Id.*

According to Mr. Ellison, on November 8, 2019, "a major shakedown was being conducted" at his housing unit. (ECF 2 at 2.) Officer Evans came into his cell and demanded that he undress in front of her to be searched. Mr. Ellison told Officer Evans that he was a devout Christian and it was against his religious beliefs to undress in front of her. He asked for a male guard but Officer Evans told him that he either obey her order or be written up and removed from the honor dorm. Mr. Ellison reluctantly obeyed.

I can dispose of Mr. Ellison's Fourth and Eighth Amendment claims in short order. In prisons, the Fourth Amendment right to privacy is theoretical at best. *See Peckham v. Wisconsin Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998) ("[W]e hasten to add that given the considerable deference prison officials enjoy to run their institutions it is difficult to conjure up too many real-life scenarios where prison strip searches of inmates could be said to be unreasonable under the Fourth Amendment."); *see also Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984)

("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that '[l]oss of freedom of choice and privacy are inherent incidents of confinement.'") (citation omitted). But even if some form of right to privacy exists, Mr. Ellison has not alleged a claim within its contours. "More importantly, regardless of how one views the Fourth Amendment in this context, it is the Eighth Amendment that is more properly posed to protect inmates from unconstitutional strip searches, notably when their aim is punishment, not legitimate institutional concerns." *Peckham*, 141 F.3d at 697.

But even under the Eighth Amendment, Mr. Ellison fares no better. In the strip search context, under established Seventh Circuit caselaw, to prevail on an Eight Amendment claim, the plaintiff must show that the search was done in a harassing manner intended to humiliate. Here's how the Seventh Circuit has described the standard:

> There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation. For example, the strip search of a male prisoner in front of female officers, if conducted for a legitimate penological purpose, would fail to rise to the level of an Eighth Amendment violation. Instead, the Eighth Amendment prohibits unnecessary and wanton infliction of pain, thus forbidding punishment

> that is so totally without penological justification that it results in the gratuitous infliction of suffering. Such gratuitous infliction of pain always violates contemporary standards of decency and need not produce serious injury in order to violate the Eighth Amendment. Moreover, physical injury need not result for the punishment to state a cause of action, for the wanton infliction of psychological pain is also prohibited. Accordingly, to state an Eighth Amendment claim [a plaintiff] must show that the strip search in question was not merely a legitimate search conducted in the presence of female correctional officers, but instead a search conducted in a harassing manner intended to humiliate and inflict psychological pain.

*Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Utterly absent in Mr. Ellison's complaint is any suggestion that the strip search was conducted to inflict wanton pain or punishment without penological justification so as to result in gratuitous suffering. Therefore, I will dismiss the Fourth and Eighth Amendment claims.

Mr. Ellison fares better on his First Amendment claim. "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotations and citations omitted). There are special rules that apply to official actions burdening religion in prisons. "In the prison context, a regulation that impinges on an inmate's constitutional rights, such as one imposing a substantial burden on free exercise, may be justified if it is reasonably related to legitimate penological interests." *Id.* Perhaps there was a good reason for the strip search in this case to have occurred as it did. But that can be left for another day. There is enough alleged in the complaint to allow the First Amendment claim to move forward.

4

There are, however, several limitations. First, the Miami Correctional Facility is not a suable entity, *see Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012), so it will be dismissed as a defendant. Second, Mr. Ellison hasn't alleged that Warden Hyatt did anything wrong, so he, too, will be dismissed. The Warden cannot be held liable simply because he oversees the operations of the prison or supervises other correctional officers. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). There is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). In short, Mr. Ellison may proceed only against Officer Evans on his First Amendment claim.

For these reasons, the Court:

(1) GRANTS Marvin Ellison leave to proceed against Officer Evans in her individual capacity for monetary damages for allegedly making him undress in front of her for the strip search contrary to his religious beliefs on November 8, 2019, in violation of the First Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Warden William Hyatt and Miami Correctional Facility;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary the United States Marshals Service to serve process on) Officer Evans at the Indiana Department of Correction with a copy of this order and the complaint (ECF 2), pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, social security number,

last employment date, work location, and last known home address of Officer Evans if she does not waive service, if it has such information; and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Officer Evans to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 30, 2020

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT